BERTHOLD LŒWENTHAL

*v.*

CYRUS H. McCORMICK *et al.*

*Filed at Ottawa November 10, 1881.*

1.  PLEDGE—*of note secured by trust deed, to party paying holder.* If a bank advances the money due on a note secured by deed of trust, to the holder, under a contract with the maker that the note shall be transferred to the bank, to be held as a pledge for the repayment of the money so advanced, the lien of the trust deed will remain until the advance is repaid; and if another, under a similar agreement with the maker, pays the bank its advance, and the note and deed of trust are passed over to him as security for the money thus paid the bank, the latter, in equity, will be subrogated to the rights of the bank, and entitled to hold the note and deed of trust as security for the money so advanced by him.

2.  Where a party draws his check upon his banker for a sum sufficient to pay off his note secured by deed of trust, and held by another, under an agreement with the bank to make the check good as to any deficiency in his account with the bank, and to take and hold the note and deed of trust in security for the sum paid for him over and above the money deposited to his credit, and it appears from the books of the bank that he had on deposit a sum sufficient to pay the check, less only $2500, this will be a payment by the maker of the note of its amount, less the $2500 deficiency in his account, and a discharge of the mortgage, except as to that sum, in favor of subsequent purchasers of the mortgaged premises, and neither the bank nor its assignee can enforce the deed of trust for any more than that sum.

3.  EVIDENCE—*banker's books.* The entries in the books of a bank being its own declarations in writing, are competent evidence against the bank and its officers of the state of a party's account, and of moneyed transactions with him, and neither the bank, nor its president succeeding to its rights and equities, can be heard to find fault with the manner in which the books were kept.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

Messrs. ROSENTHAL & PENCE, for the appellant:

If the balance to a man's credit in bank is less than a check presented, the bank need not pay any portion of the

check, but must refuse payment altogether.    Morse on Banking, 248.

It is of no consequence what form a transaction may assume.    The fact that the bank advanced the money to take up the mortgage in this case, upon the faith of the promise that the bank should have the benefit of the security then held by Farwell; and the further fact that the security was delivered to the bank concurrently with the agreement of the bank to pay the check of Walker; and also the further fact that all this was done with the expressed intention of Walker and the bank to preserve the existence of the security to the bank to the amount of $10,000; and the further transaction as detailed between Walker and Lœwenthal—all these are sufficient to stamp the transaction.    And the form that the transaction assumed will not invalidate the security in a court of equity, where the substance and not the form is considered.    *White* v. *Knapp*, 8 Paige, 173; *Rogers* v. *Traders' Ins. Co.* 6 id. 583; *Angell* v. *Boner*, 38 Barb. 425; *Keystone Bank* v. *Gay*, 21 id. 459; *Graves* v. *Mumford*, 26 id. 94; *Harbeck* v. *Vanderbilt*, 20 N. Y. 395; *Dunn* v. *Seymour*, 3 Stockt. 278; *Markell* v. *Eichelberger*, 12 Md. 78; *Chase* v. *Ridgley*, 7 H. & J. 170; *Dodge* v. *Freedman's Savings Bank*, 93 U. S. 379; *Gault* v. *McGrath*, 8 Casey, 392.

Mr. W. T. BURGESS, for the appellees C. H. and L. J. McCormick:

It is clear that Walker gave to J. V. Farwell & Co. a check for $16,160, to pay the Laughton note with.    That check was charged by the bank to Walker in his account, and he paid the note so far as the account between him and the bank goes, for in that day's business he had a clear credit of $7481.47, and it is for the bank to overcome the statement of its own books, and show such a different state of facts to exist as to entitle it or the present complainant to recover.

The circuit court erred in finding that Lœwenthal was entitled to be subrogated to the bank for the $2519.53, and interest.

Messrs. WILLIAMS & THOMPSON, for the appellee D. C. Collins, reviewed and commented at some length upon the facts, and evidence in support of the same.

Mr. CHIEF JUSTICE CRAIG delivered the opinion of the Court:

This was a bill in equity, brought by appellant, Lœwenthal, to foreclose a trust deed on the north half of a certain block in Chicago, executed by S. J. Walker, to secure a note of $16,000, payable to Adeline Laughton, bearing date June 20, 1871, due in two years. After the trust deed was upon record, and on the 1st day of October, 1872, Walker conveyed a portion of the premises to C. H. and L. J. McCormick, and on the 23d day of November the balance of the property he conveyed to De Witt C. Collins. The note and trust deed were transferred by Adeline Laughton to J. V. Farwell & Co. After the note became due, Walker, under an arrangement with the International Bank, the terms of which are in dispute, drew his check on the bank for the amount of the note, which was delivered to Farwell & Co., and they passed the note and deed of trust over to the bank. Subsequently the note and deed of trust were passed over by the bank to Lœwenthal. The contract under which this last transfer was made is also in dispute.

It is contended by appellant that the bank agreed with Walker to advance him $10,000, to be paid to Farwell & Co., to lift the note, and that the note and deed of trust were to be held by the bank for that amount; that the money was advanced and used for that purpose; that afterwards appellant furnished Walker the money ($10,000) to pay the bank, and the note and deed of trust were delivered to him, to be held as security for the money so advanced. The defendants,

10—101 ILL.

McCormicks and Collins, claim that Walker paid the note and deed of trust held by Farwell & Co.; that neither the bank nor appellant advanced any money in payment of the note, and hence the note and deed of trust can not be held by appellant on account of advances secured. If the money claimed was advanced, the deed of trust was only continued in force for the amount necessary to make Walker's account good at the bank when the transaction occurred, which was $2518.53.

This case presents no intricate questions of law. If the International Bank advanced $10,000 to pay Farwell & Co. the amount of the Laughton note, under a contract with Walker that the note should be transferred to the bank to be held as a pledge for the repayment of the money advanced, it is plain that the lien created by the deed of trust would remain until the money advanced was repaid. It is also apparent that if appellant, under an agreement with Walker, afterwards furnished the money to repay the bank the amount it had advanced, and the note and deed of trust were passed over to him as security for the money thus paid the bank, he, in equity, would be subrogated to the rights of the bank, and entitled to hold the note and deed of trust for the amount he advanced on the faith of the securities.

But it is said the bank did not advance the money claimed to have been used to pay Farwell & Co., but, on the other hand, Walker's money, which was at the time standing to his credit on the books of the bank, paid Farwell & Co. It must be conceded that there is much force in this position, and the evidence bearing upon it is not free from doubt. Walker gave his own check to Farwell & Co., on the International Bank, on the 23d day of July, 1873, for $16,160, to pay them the amount of the Laughton note. This check was charged by the bank to Walker in his account, and there remained to his credit at the close of business hours on the 24th day of July, the day the check was paid, $7481.47,

as is shown by the books of the bank. Again, the books of the bank do not show, on July 23 or 24, that Walker gave his note, or any other evidence of indebtedness, which they should have shown if the bank loaned him $10,000, as claimed. It is true that the bank may have advanced the money and taken no evidence of the loan, but such is not the usual manner of transacting such business in banks, and where business is transacted in such a loose manner by men who are, or ought to be, skilled in business transactions, it is well calculated to excite suspicion. But Walker, who seems to be a disinterested witness, testified that he made an agreement with the bank that it should advance $10,000 towards the payment of the note, and that it was to hold the note and deed of trust as security. Lœwenthal, who was at the time president of the bank, testified that the bank agreed to advance the money, and that the money was actually advanced and placed to the credit of Walker. The books of the bank show on the 24th day of July three items, of $10,000 each, deposited by Walker on that day. From this evidence the circuit court found that the money was advanced by the bank; and while we are free to admit that the question is not free from doubt, yet, after a careful examination of all the evidence bearing on the question, we are not prepared to say that the finding is not in harmony with the weight of the evidence.

The next question that arises is whether appellant paid to the bank the money which it had advanced, and received the note and trust deed, as alleged in the bill. Lœwenthal testified that the bank carried the Walker loan from the 24th day of July until July 30; then he furnished Walker means to pay the bank, and the Laughton note and the deed of trust were turned over to him. He did not pay the cash himself, but gave his note to Walker for $10,000, due in sixty days, which Walker indorsed over to Greenebaum & Foreman, obtained the money, and deposited it in the bank that day.

The note was produced in evidence, and Foreman testified that his firm had purchased it from Walker. Walker, in his evidence, does not remember how the money was paid, but does recollect that appellant agreed to arrange it for him. In confirmation of appellant's evidence a note was produced, which Walker gave him on July 30, for $10,000, payable in sixty days. The note contained the following recital: "Having deposited with said International Bank, as collateral to secure the payment hereof, my note for $16,000, dated June 30, 1871, secured by trust deed to Rufus A. Rice, trustee." The books of the bank, offered in evidence, show that on July 30 Walker deposited three sums of money, of $10,000 each, on that day. These are the main facts relied upon to prove that appellant paid to the bank the money which it had advanced, and received the note and trust deed to secure him for such payment, and were it not for the fact that appellant's testimony was in conflict with his evidence given in the case on the first trial of the cause, when he testified that he, in person, paid to the bank the $10,000 in cash, there would be but little doubt in regard to the sufficiency of the evidence; but while the credibility of appellant is somewhat shaken, still the other evidence seems to corroborate his testimony to such an extent that we are inclined to hold that the finding of the court on this branch of the case may be sustained.

But, conceding that the bank, on the 24th of July, and Lœwenthal, on the 30th of the same month, made advances, under an agreement with Walker, the question then arises how much money was advanced for which the Laughton note and trust deed can be held as security as against the rights of appellees, who were purchasers before the arrangement was made between Walker and the bank. If Walker paid Farwell & Co. the amount of the Laughton note with his own funds, derived from any source other than the bank, then the note and trust deed became extinguished, and no decree of

foreclosure can be rendered thereon; or if any part of the note was paid by funds which were not obtained from the bank, to the extent of such payment the note would be extinguished, and the premises in the deed of trust released from that portion of the debt. It must be remembered that Walker drew his check on July 23, on the bank, for the full amount due Farwell & Co., ($16,160,) under an arrangement that the bank would pay the check, the securities to be held for the amount advanced. Lœwenthal testified: "I sent one of the messengers of the bank with Mr. Walker to J. V. Farwell & Co. to get those documents. We paid the $16,160 check upon the delivery of these securities to the bank. I regarded it as security for the money advanced.  *  *  * Mr. Walker's account was running with the bank. It was utterly impossible, during business hours, to tell at any time exactly how his account stood. Neither Mr. Walker nor I knew at the time of the conversation how much money he needed, but he told me that he wanted the bank to pay his check upon the delivery of these securities, and that he would arrange the next day for it, some way." It is obvious, from this evidence, that the arrangement was that the bank should honor Walker's check, and hold the Laughton note and deed of trust for such an amount as it should advance for that purpose. If it was necessary to advance the whole amount, that was to be done; if one-half, that was to be furnished; in other words, neither Walker nor Lœwenthal knew the condition of his bank account, and what sum was needed over and above what Walker had in bank to his credit on July 24, was to be furnished.

From an examination of the books of the bank it appears that on July 24, after all checks had been paid, including the one given to Farwell & Co., and business had been closed for the day, Walker had to his credit $7500. He had provided from other sources all the money necessary to pay his check, except as to the sum of $2500. This, and this alone,

was all that the bank had to advance in the payment of Walker's check, and if the bank advanced $10,000 to Walker, such sum was not required to protect his check, and the bank can not hold the note and deed of trust as security for such a sum. On the day the check was paid by the bank Walker had to his credit of his own money, aside from any amount advanced by the bank, enough to pay the check, less $2500. When, therefore, the check was paid, Walker's funds, and not the funds of the bank, paid it, save only as to the sum of $2500.

Appellant, however, seeks to avoid the force and effect of the plain facts shown by the books of the bank, by claiming that the book-keeping is bad,—that the check should not have been charged in the account when paid, but held as an obligation or cash memorandum against Walker until it was paid. Neither Lœwenthal nor the bank is in a position to find fault with the manner in which the books were kept. The books are their own declarations in writing, which are competent evidence against them, however much they may now stand in the way of their present position. But the books were kept in the ordinary way. Walker's account was credited with all the money he received, and charged with such checks as he drew and were paid by the bank. How this method of book-keeping could work out a bad result, we are at a loss to perceive.

After a careful examination of all the evidence, we are satisfied the decision of the Appellate Court affirming the decree of the circuit court was right, and it will be affirmed.

*Decree affirmed.*