# Daniel Forbes Company v. George H. Leonard, et al.

## Gen. No. 11,794.

1. BILL OF PARTICULARS—*when not part of record.* A bill of particulars is not a part of the common-law record and unless contained in the bill of exceptions will not be considered on review, irrespective of an order striking the same from the transcript.

2. SALE AND DELIVERY—*how proof of, made.* Proof of sale and delivery of personal property is properly made by the introduction of the books of the agent of the purchaser showing such sale and delivery.

3. AGENCY—*when established.* A particular contract set forth in full in the opinion held to constitute a corporation the purchasing arm or agent of the corporation defendant sought to be held for the property purchased.

4. AGENCY—*termination of, held not established.* Held, that a particular letter set out in the opinion did not operate to terminate the agency to purchase shown to have been created by contract.

Action of assumpit. Appeal from the Circuit Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the March term, 1904. Affirmed. Opinion filed March 13, 1905.

**Statement by the Court.** This is an appeal from a judgment of the Circuit Court in favor of appellees against appellant for $1,368. The cause was tried by the court below without a jury by agreement of the parties. The issues were found for the plaintiffs and their damages assessed at $1,368. A motion for a new trial was made by the defendant (appellant here) and overruled by the court. Exceptions were duly preserved to such rulings and to the entry of judgment, and the cause brought here by appeal. Fifty-three alleged errors are assigned on the record.

The declaration originally filed contained only the common counts in assumpsit. Additional counts were subsequently filed by leave of court, and afterward by leave of court withdrawn. Various pleas and demurrers to said pleas were also filed and withdrawn, as shown by the transcript of the record, and the cause, it is agreed by the parties, was finally tried on the following pleadings:

Declaration by the plaintiff containing the common counts in *indebitatus assumpsit.*

Four pleas by the defendant as follows: 1st, the general issue; 2nd, a denial verified, of the execution of the writing, "in said declaration and in the amended bill of particulars filed with the said declaration mentioned;" 3rd, that the plaintiff by his declaration seeks to charge defendant for the debt of another person, and that there is no memorandum of defendant's alleged promise to pay such debt in writing, etc.; 4th, that the alleged promises, if any, were made between the plaintiff and a third party, and that defendant was not by its charter authorized to make any promises to pay any such alleged debt, and that for it to become liable in any manner to the plaintiff on said alleged indebtedness would be *"ultra vires."*

Replication by the plaintiff, being, 1st, a *similiter* to the general issue; 2nd, a *similiter* to the 2nd · (1st additional) plea; 3rd, to the 3rd (2nd additional plea):

(a) that there is a contract or memorandum in writing under and by which the plaintiffs claim to charge the said defendant and that the same is signed by the defendant, etc.;

(b) that the promises declared on by the plaintiffs were not promises of the defendant to answer for the debt of another, etc.;

4th, to the 4th (3rd additional) plea:

(a) that the promises declared on were the promises of the defendant;

(b) that the promises declared on were not *ultra vires* nor beyond the corporate powers of the defendant to enter into, etc.

Issue was joined by the defendant on all these replications, and the cause was submitted to the court without a jury. The court, after hearing the evidence, found the issues for the plaintiffs and assessed their damages at $1,368. Several propositions of law offered by defendant to the court were marked by it "Held," and several marked "Refused." A motion for a new trial, assigning forty-

nine reasons therefor, was overruled by the court, and judgment entered on the finding for $1,368 and costs.

The propositions of law, the reasons given for a new trial and the assigned errors are all very voluminous and need not be detailed. They cover all the points argued and which will be considered in the following opinion.

FERGUSON & GOODNOW, for appellant.

FASSETT & ANDREWS, for appellees.

MR. JUSTICE BROWN delivered the opinion of the court.

There was reserved until the hearing of this appeal a motion by the appellees to strike from the transcript of record filed herein the documents purporting to be the Bill of Particulars and the Supplemental Bill of Particulars, on the ground that while the same appear in the common-law record, they are not incorporated in the bill of exceptions. It is true, as suggested by the appellees in support of said motion, that a bill of particulars must be shown by a bill of exceptions if it is to be considered by a reviewing court (Hess v. Dawson, 51 Ill. App. 146), but there is no occasion for making any order formally striking the paper from the record. We simply ignore it for the purposes of our consideration of the cause. The same may be said of the various pleadings shown by the common-law record, but shown also by that record to have been withdrawn before the issues were finally joined and the cause tried. They do no harm beyond increasing the physical volume of the record, and cut no figure in the consideration of the cause. The motion therefore is denied.

As to the merits of the cause, the disclaimer by appellees of any right to hold the defendant liable under a guaranty of the debt of another, either oral or written, and their disclaimer of suing on the contract hereinafter described, or as third party beneficiaries under that contract, render it unnecessary to discuss a large portion of the appellant's argument.

The claim of appellees was and is that the Daniel Forbes

Company (the defendant below and appellant here) pur-
chased of George H. Leonard & Co. (composed of the
plaintiffs below and appellees here) a large quantity of
tanning materials, and that for such purchases at the prices
at which they were made there is a balance of $1,368
which has never been paid, and for which the appellant is
therefore now liable.

The appellees claim that these purchases were made for
the appellant by appellant's agent in that behalf duly au-
thorized, and that appellant received the entire benefit of
such purchases; that this agent was the Myhan Leather
Co.; that the appellant was the undisclosed principal of
this agent, the Myhan Leather Co., between November 1,
1897, and January 6, 1899, and after this latter date the
disclosed principal. They claim that the Forbes Company
was therefore liable as well for the purchases made by the
Myhan Co. in its own name, but as appellees allege in fact
for the Forbes Co., before January 6, 1899, as for those
so made after that date in the avowed name of the appel-
lant. This is argued to be important as pertaining to the
effect of certain payments made to the appellees after Jan-
uary 6, 1899, and applied by them when made to the old-
est items on the account, which items were for merchan-
dise bought before January 6, 1899. These payments, it
is claimed by appellant, should have been applied to pur-
chases made after January 6, 1899, if the appellant is to
be held liable for purchases made after that date. It was
only for purchases after that day on which appellees were
first informed of the alleged liability of appellant, it says,
that appellant could be held, if at all; and as appellees
knew that the money that was paid them after that date
came from appellant they were bound to apply it to that
indebtedness for which appellant was thus liable. What-
ever force there is in this argument rests entirely on the
assumption that the conversation in evidence in January,
1899, (probably on January 6th), between Mr. Hosick, of
the Myhan Leather Company, and Mr. Leonard, in which
Mr. Hosick told Mr. Leonard to charge the goods to the

Daniel Forbes Company, in some manner changed the liability of the defendant to the plaintiff from that day on, in relation to tanning material purchased by the Myhan Leather Company, for use in its tanning business. The appellees, however, expressly disclaim, as we have seen, the position that such conversation involved or established a guaranty by the defendant of the Myhan Company's debts, and we do not see how any valid distinction can be drawn between the transactions occurring between the Myhan Leather Company and the appellees after this conversation, and those occurring before.

The material thing claimed and relied on by the appellees to show the appellant's liability in this cause is the agency for the appellant which the Myhan Co. exercised. If the Myhan Co. was the agent of the Forbes Co. at all, it became so when an agreement between the two companies dated November 1, 1897, and hereinafter set out, was executed, and the conversation of January 6, 1899, between Hosick and Leonard was merely the disclosure of the fact to the appellees. It is of course elementary that an undisclosed principal is as liable to one who deals with the agent as he would be if he were disclosed. If his identity be at any time revealed, he may be sued for all the transactions which were actually his. The claim of appellant, therefore, that the judgment in this case is too large, because of the improper application of the payments indicated, need not be further noticed. The claim is made by the appellant also that it would have been *ultra vires* for it to become liable in any way for this indebtedness sued on, and it must therefore be held not to have done so. This position, however, is probably based on the assumption that to hold the Forbes Company in this cause, would be to make it liable as a guarantor for the debt of another. But this is, as has been indicated, not the proposition on which this judgment can be sustained, if at all. The Forbes Company had certainly the power, under its articles of incorporation providing for "a general business in manufacturing and dealing in leather," to buy tanning mate-

rials, and the purchase of tanning materials through an agent is the cause of action claimed herein.

Appellant also claims that if the Myhan Leather Co., in making the purchases of tanning materials, could at any time or under any circumstances, have been considered and held the agent of the Forbes Company, under the agreement of November 1, 1897, its agency had ceased before these purchases sued for were made, because at that time the limit of its authority had been reached. It is insisted that it was to have authority only up to the amount of $10,000, and that under the circumstances disclosed in this record the plaintiff, in dealing with the Myhan Company, was bound by this limitation. Further it is said that the authority of the Myhan Company to act as the purchasing agent, if it existed, was subject to a condition that the Forbes Company should have notice of all purchases, and the right of determining their amount, that this condition or limitation was binding on the appellees, and that they cannot recover from the Forbes Co. in absence of proof that notice was given it of the amount purchased.

Another claim of appellant is that any agency or authority to purchase from the appellees held by the Myhan Leather Co. before April 3, 1899, was revoked or abrogated by a letter of that date from the appellant to appellees, hereafter quoted. If this were so held, the judgment would be too large, even if otherwise justified, as almost $700 of the purchases sued for were made after April 3, 1899.

These various matters of defense last mentioned may be best disposed of in this opinion in connection with the main question to be considered, which is, the effect of the agreement of November 1, 1897. But before taking up that instrument we may conveniently pass on the only remaining point urged by the appellant applicable to the contentions of the appellees. It is that the sale and delivery of the goods is not sufficiently proven, and that in the attempt to prove such sale and delivery, the books of the Myhan Leather Co. and the testimony connected therewith

were improperly admitted in evidence. On the hypothesis that the appellant is liable for the purchases which were actually made by the Myhan Leather Company during the period covered by the transactions alleged in this cause, we do not deem this position well taken. There was ample evidence from which the trial court would have been justified in believing that the various purchases as made and the prices at which they were made, were from week to week brought to the attention of the appellant corporation by statements of account. No complaint of the amount of them was made, so far as appears, but, on the contrary, several times the president of the corporation promised Mr. Hosick of the Myhan Co. that he would shortly pay something on account of the appellees' bills, and sometimes did so. So Mr. Hosick testified. Mr. Leonard's testimony tends to show similar promises made directly to him without objection as to amount claimed. Besides this, the journal of the Myhan Leather Company, which the evidence tended to show was a book of original entries, was introduced, and showed the account as claimed by the appellees. So, too, was the ledger account of the same company put in evidence to show the same thing. The journal would have been competent even had it been the account book of the party plaintiff; both ledger and journal were competent as admissions of the party defendant on the hypothesis that the Myhan Leather Co. was the agent of that party. Loewenthal v. McCormick, 101 Ill. 143; Meecham on Agency, sec. 714; Greenleaf on Evidence, sec. 113, vol. 1. If there were any improper evidence admitted in this cause, the trial judge will be presumed to have disregarded it, if there was sufficient evidence without it to sustain his finding.

This appeal, then, turns entirely on the effect upon the liability of the defendant of the agreement of November 1, 1897, between the appellant corporation and the Myhan Leather Company, and the transactions under it, and the further effect, if any, of the letter of the appellant to the appellees dated April 3, 1899. At the time the agreement

of November 1, 1897, was executed, the Forbes Company had been for a long time the selling agents at Chicago for the Myhan Leather Company, which did a tanning business at South Haven, Michigan. The Forbes Company has been advancing money to the Myhan Company to carry on the business and reimbursing itself for such advances and for its commission for selling from the proceeds of the sales. The Myhan Company had become indebted to the Forbes Co., or to Mr. Forbes, its president (it does not seem quite clear from the record which), in a large sum for money advanced to it in this way, and had given, as Mr. Hosick thought, at that time, a chattel mortgage on its entire plant to secure these advances. This being the situation, Mr. Forbes became a director of the Myhan Company, and the following contract was executed:

"This Agreement, made and entered into on the first day of November, A. D. 1897, by and between the Myhan Leather Co., a corporation, at South Haven, Michigan, and Daniel Forbes Co., a corporation, of Chicago, Illinois, Witnesseth:

"That, Whereas, the Myhan Leather Co. is engaged in tanning hides for and on account of other parties, and

"Whereas, it desires to secure certain credit and capital from said Daniel Forbes Co. in furtherance of the business dealings between them, and for carrying on its said business to a better advantage, and

"Whereas, it desires to secure certain credit and capital from said Daniel Forbes Co. in furtherance of the business dealings between them, and for carrying on its said business to a better advantage, and

"Whereas, the said Daniel Forbes Co. is willing to extend credit and make loans to the extent, and upon the conditions hereinafter named, and

"Whereas, the said Myhan Leather Co. has and will enter into contract with other parties for the tanning of hides, which said contracts shall provide that said Myhan Leather Co. shall ship all of the leather when tanned

Forbes Company v. Leonard.

to Daniel Forbes Co. to be sold by it for account of the consignors of the hides;

"Now, therefore, it is agreed as follows: The said Myhan Leather Co. agrees to tan and manufacture leather for the account of such parties who shall consign to it hides and skins for tanning purposes, and secure from said parties a contract that all leather manufactured and hides consigned to said Myhan Leather Co. shall, through said Myhan Leather Co., and on behalf of the consignors to it, when said leather is ready for marketing, be consigned to the Daniel Forbes Co. of Chicago, Illinois, for the purpose of sale thereof.

"And the said parties consigning said hides to the Myhan Leather Co. and the Myhan Leather Co., so far as its interest shall appear, agree to pay Daniel Forbes Co. a commission of five per cent as commission for selling said hides, and the proceeds coming to said Daniel Forbes Co.'s hands shall be payable to the consignor of the raw hides to the Myhan Leather Co. less the amount of the Daniel Forbes Co.'s commission for selling the same, and less the amount that the owner of the hides shall agree to pay the Myhan Leather Co., and less freight charges, insurance, or other expense, properly deductable from the proceeds derived from the sale thereof.

"And in consideration of the conditions set forth in this agreement, and the conditions of the agreements between the consignors of hides, and the Myhan Leather Co., the Daniel Forbes Co. agrees to make advances from time to time to the Myhan Leather Co., for the purpose of enabling it to carry on its said business, and for the carrying out of the conditions of this agreement, provided, however, that the Daniel Forbes Co. shall not be under any obligations to furnish credit or money or other benefits to said Myhan Leather Co. in excess of the value of Ten Thousand Dollars ($10,000.00), the amount being entirely in the discretion of the Daniel Forbes Co.

"It is further agreed that all bark and tanning materials purchased, and to be used by the Myhan Leather Co.

in conducting said tanning business, and in the tanning of hides for its customers, shall be purchased and billed in the name of the Daniel Forbes Co., and shall be delivered at the premises of the Myhan Leather Co., and be the property of the said Daniel Forbes Co., subject, however, to the right of the Myhan Leather Co. to make requisitions thereon, for the amount necessary to carry on the tanning business.  The said Daniel Forbes Co. reserving the right to have notice of all purchase under this clause, and the right of determining the amount of the same.

"It is further agreed that said Myhan Leather Co. shall proceed promptly to manufacture into leather all hides consigned or delivered to it, in a good and workmanlike manner and that the same, when manufactured and. delivered to the Daniel Forbes Co. shall be in a merchantable condition.

"It is further agreed that the said Daniel Forbes Co. shall have a first lien upon all hides and leather, in whatever stage the same may be, upon the premises of the Myhan Leather Co., or upon leather consigned to it, for all advances, costs, or expenditures in tanning said leather, or commissions or expenses of shipment, and also a first lien upon the proceeds from the sale of said leather tanned by the said Myhan Leather Co. aforesaid, until the amount of said advances, charges and expenses are paid.

"And the parties hereto further agree that the amount of cash advanced by the Daniel Forbes Co. used in the payment of the salaries of the officers of said Company, shall be of the same amount each month, and the names of the persons and the amounts to be received shall be determined at the time of the signing of this agreement, and a schedule thereof attached hereto and made a part hereof.

"And it is further agreed that on the first day of each month the said Myhan Leather Co. shall render a statement to the Daniel Forbes Co. of the amount of money advanced by it and of the amount of material used upon requisitions from the tanning material on its premises, belonging to the Daniel Forbes Co. and used by it, which

shall determine, when accepted by both parties, the amount of the monthly advance and credit; and that, thereupon, the said Myhan Leather Co. shall execute and deliver to the Daniel Forbes Co. its promissory notes, in such form as the Daniel Forbes Co. shall require.

"And it is further agreed that the Daniel Forbes Co., in accounting for the sale of the leather received by it through the Myhan Leather Co., after the payment to the consignors of said leather the amount due them, and the payment of the Daniel Forbes Co.'s commission for selling said leather, the balance thereof shall be applied and credited upon the first maturing notes and the interest at the rate of six per cent per annum of the Myhan Leather Co. payable to the Daniel Forbes Co. until or unless the amount credited upon said notes shall exceed the amount of matured notes of the Myhan Leather Co. to the Daniel Forbes Co., then the surplus shall be paid over to the Myhan Leather Co.

"And the Myhan Leather Co. further agree that they will secure from their consignors of hides to them for tanning purposes an agreement consistent with the terms of these articles of agreement.

"And it is further agreed that this contract may be terminated at any time, by either party, upon giving the other thirty days' notice of its intention to terminate such contract, but the giving of such notice and the expiration of said thirty days shall in no wise impair or disturb the rights and the liens of the Daniel Forbes Co. already acquired under this agreement, and the rights and interests of both parties thereto shall remain the same as if such notice had not been given until the hides in process of tanning, and the sale of the leather derived therefrom, and the sale of the leather in the factory of the Myhan Leather Co., or in the possession of the Daniel Forbes Co. shall have been fully performed, and all matters relating thereto adjusted, and the tanning material of the said Daniel Forbes Co. upon the premises of the Myhan Leather Co. shall remain there until that quantity neces-

sary to complete hides then in tanning, and such other reasonable time for the balance, as is necessary for the sale or removal thereof.

"This agreement shall be binding upon the parties hereto, their respective successors and assigns.

"In witness whereof, the parties hereto have signed, by their proper officers, and affixed their corporate seals, the day and year first above written.

· "Myhan Leather Co.,
"per H. M. Hosick, Prest.
"Daniel Forbes Co.,
"Daniel Forbes, Prest."

Although appellees disclaim this as "an instrument sued on," they claim it to be relevant, competent, and material to prove the agency of the Myhan Leather Co. to make the purchases involved in this suit and render the appellant liable therefor. There was no dispute as to the execution of the instrument. It was testified to by Mr. Forbes himself, indeed, and we agree with the contention of appellees in this regard. We think the instrument competent and material.

It seems to us that the effect of this contract was to make, as counsel say, the Myhan Leather Co. merely an arm or adjunct of the Daniel Forbes Company. It made the Daniel Forbes Co. the sole owner of these varied tanning materials for which this suit was brought; it allowed the Leather Co., for use even, only such material as it might make requisitions for, as necessary for its business. For such requisitions as it should make, that is, for such materials as it might use in its business, it was required to execute and deliver its notes to the appellant.

It is undoubtedly true in a sense, as counsel for appellant suggest, that the various agreements of the contract were meant to effect a loan of credit from the Forbes Company to the Myhan Company, and that the ownership of the materials furnished was intended as security to the Forbes Co. But this does not prevent the effect of these

agreements in making the Forbes Co. liable to third parties for purchases of material made by the Myhan Company, which were to be "purchased and billed in the name of the Daniel Forbes Co.," and to be "the property of said Daniel Forbes Co." The appellant could not have the benefits, securities and profits which this contract would have given it, had the business been prosperous, without incurring also the obligations and liabilities which it entailed. Under this arrangement, the parties to it went on in business, and although the existence or purport of any such contract was not known to the appellees before January 6, 1899, they were none the less dealing with the principal and accumulating a credit against it. On or near this date they were told at least enough concerning the contract to disclose the principal, and the purchases for which this balance sued for is due were ordered charged and billed, as the agreement provided they should be, to the. appellant. It is claimed, as before indicated, that appellees cannot hold appellant liable because a limit of $10,000 is placed by the agreement on the obligation of the Daniel Forbes Company to "furnish credit or money or other benefits to said Myhan Leather Co." This, however, we think was a matter entirely between these two companies. As might perhaps have been expected in a contract the effect of which while it lasted was to make the business of one party a tributary and adjunct of that of the other, the right was reserved to that second party to refuse to venture farther after a certain investment had been reached. If that limit were reached and the Forbes Co. had then stopped the course of business previously pursued, the Myhan Company would have ceased to be its agent for purchases such as those involved here. This would have had the same effect upon the rights of the appellees or other persons selling tanning materials for the Myhan Co.'s use, as would the formal termination of the contract by notice, as provided in its last clause. The appellant is liable because of the existence and continuing effect of the contract, not because of any disclosure made or anything

said by Mr. Hosick of the Myhan Co. to appellees, and undoubtedly, therefore, in sending the goods they did to the Myhan Company, on that company's order, while charging the Forbes Company with their price, and relying upon the Forbes Company for payment, the appellees were doing so at the risk of the relation between those companies being and continuing such as made the one the agent of the other. But that conditions were such that those relations and the course of business might, at the option of the Forbes Company, have been changed, is not sufficient to exonerate that company. It must appear that they had changed, or at least it must not appear, as it does here, that they had not changed.

The same reasoning applies substantially to the contention of appellant that the clause in the paragraph concerning the purchase of, tanning material, reserving to the Forbes Company the right to have notice of all purchases, and the right of determining their amount, placed on the appellees, before they could hold it liable, the burden of seeing that it had such notice, and had determined such amount. The evidence of Mr. H. M. Hosick tended to prove both that the Forbes Co. chose in the course of business to waive the right reserved by this clause, and also that while the purchases sued for were going on, the president of the Forbes Company knew of them. Although the latter testified that the invoices of these purchases sent him at stated periods, according to Mr. Hosick's testimony, never reached him, the trial judge had evidence before him which would have justified him in believing that during all of the period covered by these purchases the Forbes Company knew that the Myhan Company was buying tanning materials freely of the appellees.

If the contract had provided that the ownership of the materials bought and the rights and obligations of the parties under it should relate only to such materials as were bought before the $10,000 limit had been reached, and of the intended purchase of which the Forbes Company was advised and had passed on, a different question would have

been presented. It might then well have been argued that the Myhan Company was not the agent of the Forbes Company in purchases other than those thus conditioned, but under the facts as they exist in this cause, we see no merit in the appellant's contention to this effect.

The letter of April 3, 1899, written by the Daniel Forbes Co. to the appellees, raises a somewhat different question. It is as follows:

"Chicago, April 3, 1899.

"Messrs. George H. Leonard & Co.,

"225 Purchase Street, Boston.

"Gentlemen:—We received your statement for merchandise shipped to the Myhan Leather Co. of South Haven, Michigan, and we are a little surprised at your sending us a statement for this account, as we never pay any of their bills unless they so direct us, and if you expect us to pay this, we think you have a mistaken idea of the matter, as we do not assume anything belonging to them. Therefore, please don't send us any more statements for their account. We inclose the statement herewith.

"Yours truly,

"Daniel Forbes Co."

Counsel for appellant contend that even on the assumption that there was a liability on the part of the Forbes Co. for goods shipped to the Myhan Co. before the transmission of this letter, there could have been none after.

Appellees claim in the first place that neither the mailing nor reception of this letter was proven. The evidence may be technically weak on this point, but as we understand the record, the counsel for appellees practically withdrew any objection to the letter press copy on that score. Waiving this question, therefore, and assuming that the letter was mailed and received in due course, in accordance with its address and date, what is its effect? To give it that effect which appellant claims for it, would be to make the expressions, "We never pay any of their bills unless they so direct us," "We do not assume anything be-

longing to them," and "Don't send us any more statements
for their account," tantamount to an abrogation of the con-
tract existing between the two companies, or to an exercise
of the right reserved to the Forbes Company under that
contract, to restrict the purchases by cutting off any sought
to be made by the appellees. We cannot consider the words
involved as equivalent to either of these things. The regu-
lar course of business was to bill the goods in the name
of the Daniel Forbes Company and send the bills or state-
ments from the Boston office of George H. Leonard & Co.,
together with the goods, to the Myhan Leather Co. at South
Haven. There they were checked up from the goods and
then sent to the Myhan Leather Co. at Chicago, from
which, according to the testimony of Mr. Hosick, they
were sent to the Forbes Company. The Forbes Company,
under the contract, was furnishing money to the Myhan
Co. to do business, and the Myhan Co.'s checks made the
payments to George H. Leonard & Co.

The liability of the Forbes Company to the appellees
largely depended on the actual relations which the contract
established between the Forbes Co. and the Myhan Co., and
not on what had been disclosed to the appellees, and the
Forbes Company might well have used the language of
the letter of April 3d, meaning nothing more than to insist
on following the usual course of business. Indeed, if the
Forbes Company was "surprised" at being held account-
able for the purchases in question, rather than at the ap-
pellees "sending it a statement for the account," and de-
sired under no circumstances to incur any further lia-
bility of that sort, it is strange that it did not explicitly
order the Myhan Co. to cease purchasing from the appel-
lees, or the appellees to cease shipping to the Myhan Com-
pany under any supposed reliance upon the Forbes Com-
pany's credit. It may be noted that it is at least left very
doubtful by all the evidence whether the amount of these
very items sued for was not included in the notes taken
by the Forbes Co. as representing the Myhan Co.'s in-
debtedness to it. The fair inference from the evidence

(apart from the direct testimony) of the course of business would seem to indicate that it was. The tanning material bought became the property of the Forbes Co.; the Myhan Co. was obliged in using it to account for its value as a part of the advances to be charged to it, for which it was to give "its promissory notes in such form as the Daniel Forbes Co. should require." The promissory notes required seem to have been given. But it is not necessary to make such a finding as is here indicated to sustain this judgment.

We think that this opinion covers sufficiently the points raised on the rulings on evidence and on offered propositions of law, to render unnecessary a more detailed discussion of them, or of the various alleged errors in connection therewith.

We find no reversible error in the record, and the judgment of the Circuit Court is affirmed.

*Affirmed.*