# Southern Railway Co. *v.* Hyde.

*Crossing Accident.*

(Decided Dec. 16, 1909.—51 South. 368.)

1. *Appeal and Error; Harmless Error; Pleading.*—The rulings on the pleading which were afterwards eliminated were harmless to the defendant.

2. *Railroads; Collisions; Complaint.*—A complaint in an action against a railroad for the death of the person struck while passing along a street, alleging that the trainmen wantonly or intentionally ran the engine against decedent causing his death; that the engine was running fifteen miles an hour backing at night without a light, and without giving any signal of approach; that the trainmen knew that people crossed and recrossed the street frequently and in great numbers; and that with reckless indifference to the safety of the people they intentionally propelled the engine at a high speed, and thus ran against decedent who was attempting to cross the street, and that the conduct of the trainmen was reckless and wanton, states a good cause of action.

3. *Same; Contributory Negligence.*—Contributory negligence is not available as a defense to a count for wanton or intentional injury.

4. *Same; Assumption of Risk.*—A plea of assumption of risk is not available as a defense to a count for wanton or intentional negligence.

5. *Charge of Court; Directing Verdict.*—Where there was evidence from which the jury might reasonably infer wanton negligence, a charge directing a verdict for the defendant on a count charging wanton negligence is properly refused.

6. *Negligence; Wanton Negligence; Instruction.*—A charge asserting that negligence may amount to wantonness where the conduct of one is recklessly indifferent to the peril of another, and wanton in conduct and relation thereto as where one party becoming aware of the danger of another fails to use all the means at hand to conserve the safety of the latter, is erroneous, since the definition as last stated may amount to no more than subsequent negligence, and for the further reason that it implies the duty of exercising the

highest possible care and makes any breach thereof wanton negligence, even without consciousness that such a failure will result in injury; besides, the failure to exercise the highest degree of care may be simple negligence merely.

7. *Same; Subsequent Negligence.*—Simple or slight negligence is actionable after knowledge of peril, but a knowledge of peril does not make wanton all subsequent negligence contributing to the injury as subsequent negligence may be slight, wanton or gross.

APPEAL from Colbert Circuit Court.

Heard before Hon. C. P. ALMON.

Action by John F. Hyde, administrator of Robert Hyde, deceased, against the Southern Railway Company. From a judgment for plaintiff, defendant appeals. Reversed and remanded.

The counts on which the trial was had were as follows:

(1) "The plaintiff, John F. Hyde, as administrator of the estate of Robert Hyde, deceased, claims of the defendant, Southern Railway Company, a corporation, the sum of $25,000 damages, for that on and prior to the 16th day of July, 1907, the defendant owned and operated a railroad from Memphis, in the state of Tennessee, to Stevenson, in the state of Alabama, upon and over which the defendant ran engine and cars, propelled by steam, for the transportation of freight and passengers for hire, and that said railroad was laid upon and ran through a public street in the city of Tuscumbia, Ala.; that on the 16th day of July, 1907, plaintiff's intestate was lawfully crossing said railroad in said public street in said city of Tuscumbia, the station of defendant's said railroad, and the defendant's agents and servants, while engaged in running and entering upon, in, or over said railroad in said corporate limits of said city of Tuscumbia, Ala., and in the conduct of the business of the defendant, then and there wantonly or intentionally ran said engine against plaintiff's intestate, Robert Hyde, thereby causing his death."

(4) Same as 2, down to and including the words, "freight and passengers for hire," and adds: "And that on the night of the said 16th day of July the agents and servants of the defendant wantonly propelled said engine on the tracks of the defendant on and along a public street in the corporate limits of the city of Tuscumbia, Ala., at a time when and a place where people were wont to cross and recross said street in great numbers and with frequency, and said engine was then and there by said agents and servants of defendant wantonly run backwards at a high rate of speed, to wit, a rate of about 15 miles per hour, and in the nighttime, with no light on the rear end thereof, that was moving forward, and without giving any signals of approach; and the said engine, while being run as aforesaid by the agents and servants of the defendant at the time and place aforesaid, was propelled on and against plaintiff's said intestate, Robert Hyde, who was attempting to cross said public street at the place aforesaid, and the said Robert Hyde was then and there crushed and killed. And plaintiff avers that said agents and servants of the defendant who were in charge of said engine knew, at the time they propelled said engine along said street in the city of Tuscumbia as aforesaid, that people then and there crossed and recrossed said street in great numbers and with frequency, and that injury would probably result to some of said people so crossing and recrossing said street; yet the said agents and servants of the defendant, with reckless indifference to the safety of said people crossing and recrossing said street as aforesaid, intentionally propelled said engine backwards at a high rate of speed as aforesaid, to wit, about 15 miles per hour, without giving any signals of approach, and without any light on the forward end of the engine, and, while so propelling said engine, ran

the same on and against plaintiff's intestate, the said Robert Hyde, who was then and there attempting to cross said street, whereby plaintiff's said intestate was crushed and killed. And plaintiff avers that the said conduct of the said agents and servants of the defendant in running said engine in the manner aforesaid at the time and place aforesaid on and against plaintiff's said intestate was reckless and wanton."

PAUL SPEAKE, for appellant.—Counts 2 and 4 are insufficient to charge wantonness.—*Goodloe v. M. & C.*, 107 Ala.; *A. G. S. v. Sanders*, 145 Ala. 548; *Case v. Hulsebush*, 122 Ala. 212. Count 4 was clearly not sufficient.—*Lee's Case*, 92 Ala. 262; *Chewning's Case*, 93 Ala. 24; *Martin's Case*, 117 Ala. The engineer had a right to presume that a person will get off the track. —*Bowers' Case*, 110 Ala. 328; *Bush's Case*, 122 Ala. 470; see also in connection with count 4 the following authorities.—45 South. 469; 41 South. 949; 44 South. 1037; 44 South. 418; 43 South. 832; 43 South. 342; 41 South. 302; 134 Ala. 261; 135 Ala. 533; 132 Ala. 471, 121 Ala. 221. Counsel discusses charges given and refused, and insist that on the authority of the above cases the court erred in each instance.

JAMES JACKSON, and GEORGE P. JONES, for appellee. —This cause should be affirmed on the authority of *Southern Ry. Co. v. Weatherow*, 153 Ala. 171.

MAYFIELD, J.—Plaintiff's intestate was killed by one of defendant's locomotives. The accident occurred in one of the public streets in the city of Tuscumbia. The railroad track at the place of the injury was laid along the public street. The engine which killed intestate was moving along this street; it being at the time

much traveled by the public. The engine was engaged in doing some switching. The evidence is in conflict as to whether there were any freight cars attached to the locomotive, and also as to the speed of the engine at the time it struck intestate—some of it tending to show that the engine was moving at the rate of about 10 or 12 miles per hour and some at 3 or 4 miles. The accident occurred at about 10 o'clock at night. The evidence is in conflict as to whether or not there was a light on the engine at the time of the accident. An ordinance of the town was introduced in evidence, which limited the speed of trains within the city boundaries to six miles when moving forward, and to four when moving backwards. Intestate was crossing the street diagonally when stricken by the engine. The jury returned a verdict for plaintiff, and assessed his damages at $10,000. From a judgment of the court rendered thereon, and judgment overruling and denying defendant's motion for a new trial, defendant prosecutes this appeal.

The original complaint contains several counts; some declaring on simple negligence, and others on wanton negligence and willful injury. All the counts were eliminated except Nos. 2 and 4, which declared on wanton negligence or willful injury. It is unnecessary on this appeal to review the rulings of the trial court upon the counts thus eliminated and upon which the trial was not had. Counts 2 and 4 were sufficient, and were not open to the grounds of demurrer interposed to them. Demurrers thereto were therefore properly overruled. They each declared upon wanton negligence or willful injury. Therefore pleas of contributory negligence and assumption of risk were not appropriate or availing as defenses, and demurrers thereto were properly sustained on that ground. Under all the evidence

in this case, the question of wanton negligence on the part of defendant's agents operating the engine was a question of fact for the jury under appropriate instruc-' tions from the court, and not a question of law for the court. There was evidence from which the jury might reasonably infer wanton negligence. The court therefore properly declined to give the affirmative charge requested for the defendant.

The instant case is very much like *Shelton's Case,* 136 Ala. 191, 34 South. 194, and we can do no better than to here quote what is said in that case in point, which is as follows: "Shelton was on the track of the crossing 75 feet in front of the engine. He remained there till the engine reached him, and ran over and killed him. The engineer and fireman were all the while looking ahead. Both of them could have seen him from the time McDowell saw him until the engine was within 15 feet of him, if he was on the side of the track. After the engine had attained that proximity, the engineer could still have seen him until the engine got within two feet of him, if he was standing on the right side of the track. Similarly, if he was on the lefthand side, he would have continued in view of the fireman till the engine was within two feet of him. If he was in the center of the track, both the engineer and the fireman could have seen him until the engine was within a few feet of him. Very clearly, if either one of them did not see him standing there on the track while the engine reduced the distance to him from 75 to 2 or even 8 feet, the jury were authorized to find that his position was one of manifest peril, and that a sense of it was impressed upon the engineer. The engine could have been stopped in five feet. Its slow motion could have been materially reduced in two feet. Seeing him there, they could have averted the danger to him by stopping

the engine. They made no effort to stop it, and he was run upon and killed. The important question yet remains: Did the engineer or fireman actually see him in this perilous position? Or, rather, does the evidence we have detailed afford the basis for an inference by the jury that one or both of them did in fact see him in such position? Both of them testified that they did not see him or anybody on the track at that time and place. But might not the jury find to the contrary notwithstanding? We think so."

The entire charge of the court was reduced to writing, and is set out in the transcript; and most of it appears to be a correct exposition of the law applicable to the case on trial. The charge as a whole was excepted to by defendant, and several and separate exceptions were reserved to certain specified portions thereof. The exception to the charge as a whole was not well taken, and so with most all the exceptions to specified parts thereof. But we are of the opinion that the trial court fell into reversible error in some parts of its oral charge, in which wanton negligence is in effect defined to be any negligence after knowledge, especially in that part numbered 10, which was as follows: "Negligence may amount to what is termed wanton where the conduct of one is recklessly indifferent to the peril of another, and wanton in conduct and relation thereto, as where one party after becoming aware of the danger of another fails to use all the means at hand to conserve the safety of the latter." The last clause of this definition, which was intended and used as an example of the definition given of, and illustrating the rule as to, wanton negligence, rendered the definition both faulty and misleading; and the natural and direct, if not the necessary tendency thereof was to mislead the jury to the prejudice of defendant. The example given by this last clause might constitute subsequent negligence, but not

wanton. Simple or slight negligence on the part of a defendant, after knowledge of plaintiff's peril, is actionable negligence, but it is termed subsequent negligence in case the plaintiff was guilty of antecedent negligence.

Defendant's knowledge of plaintiff's peril does not make wanton all subsequent negligence of his which may contribute to plaintiff's injury. This negligence after knowledge of peril or danger may be slight, gross, reckless, or wanton. The effect of defendant's knowledge of plaintiff's peril is to render the defendant liable for injury to plaintiff by any subsequent negligence. The example given in this part of the charge is a case of subsequent negligence, but not one of wanton negligence. The language in the charge—"fails to use all the means at hand to conserve the safety of the latter" —implies the duty of exercising the highest possible degree of care, and makes any breach of this highest duty wanton negligence, and without consciousness that the failure to use all means at hand will result in injury. The true rule is that a failure to exercise the very highest degree of care and prudence is only simple negligence. While knowledge of the peril is usually necessary to render a wrongdoer liable as for wanton negligence, such knowledge does not render him guilty as for wanton negligence for every possible act of negligence. The example given as an illustration is expressly stated in the part of the charge to which exception is reserved as being a case of wanton negligence. In this respect it was error. The distinction between subsequent and wanton negligence as applicable to cases like this was clearly pointed out and stated by McClellan, C. J., in Shelton's Case, 136 Ala. 212, 34 South. 201. The facts in that case were very similar to those in this case. In that case the Chief Justice says: "If, knowing his perilous position, they (engi-

neer and fireman) neglected to take measures to save him and which if taken would have saved him, this would be such negligence of the defendant as would entitle plaintiff to recover notwithstanding Shelton himself was negligent in having put himself in that position, and if with knowledge of his peril they, or either of them, purposely or consciously omitted action to save and which would have saved him, this would be wantonness for which the company would be liable, however negligent Shelton may have been."

Likewise, we find no error in any of the requested charges given at the instance of the plaintiff. They all state propositions of law frequently announced by this court as applicable to trials like the one here being reviewed.

There was no error in declining to give any of the charges requested by the defendant. They were each properly refused. The only ones as to the propriety of refusing which there is doubt are those which requested the affirmative charge for the defendant as to the entire action and as to each count of the complaint. We hold that under the evidence in this case the question of wanton negligence was one of fact for the determination of the jury, and not one of law for the court. The undisputed facts, and many of the disputed facts of the case are very much like the facts of *Shelton's Case, supra,* 136 Ala. 191, 34 South. 194.

There was no error in any of the rulings of the trial court upon questions of admitting or excluding evidence, as to which exceptions were taken.

The judgment is reversed and the cause is remanded.

Reversed and remanded.

DOWDELL, C. J., and SIMPSON and McCLELLAN, JJ., concur.