# Northern Alabama Railway Company *v.* Guttery.

## *Death Action.*

(Decided November 7, 1914.  66 South. 580.)

1. *Death; Action; Statutes.*—Section 2486, Code 1907, gives a cause of action for death caused by culpable acts or omissions, if decedent, if he had lived, could have sued for the injuries caused thereby; hence, the only question in an action under that statute for death is whether the case stated and made falls within the statute, and if so, whether the liability may be avoided by omission on the part of decedent, or by exonerating acts.

2. *Railroads; Persons on Track; Liability; Lessor.*—A railroad company which admits a joint or common use of its tracks by itself and another railroad company is liable to pedestrians on the track for the negligence of the latter company while enjoying the use of the track, notwithstanding the provisions of section 3497, Code 1907.

3. *Same; Evidence; Admissibility.*—Where recovery for the death of pedestrians was sought on the theory of wanton or wilful misconduct in running a train on or against decedent while walking on the track, it was competent to show the customary and frequent use of the track at the place of the accident by a large number of people, and of the trainmen's knowledge thereof.

4. *Same; Care Required.*—Where trainmen know that a track at a certain point is commonly used by pedestrians, it is their duty to keep their train in control at that place so that they may avoid injuring pedestrians after discovering them upon the track.

5. *Same; Evidence.*—Evidence of the maintenance of places for the illegal sale of liquor near the point of the accident was not admissible in an action against a railroad company for the death of a pedestrian struck by a train of another railroad company using the track, where defendant relied on a lease for the use of the track and the use by the lessee company of the track for its exclusive benefit at the time of the accident.

[Northern Alabama Railway Company v. Guttery.]

6. *Same; Instructions.*—In an action for the death of a pedestrian struck by a train, charges which pretermit consideration of evidence introduced in support of the wanton charge that the place of the accident was customarily used by a large number of persons, were properly refused.

7. *Same; Evidence; Sufficiency.*—The evidence examined and held to require a submission to the jury of the issues of wanton conduct of the trainmen, and of negligent failure to exercise proper care after discovering decedent's peril.

8. *Charge of Court; Covered by Those Given.*—It is not error to refuse charges substantially covered by written charges given.

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. CURTIS.

Action by W. L. Guttery, as administrator of Baxter Guttery, deceased, against the Northern Alabama Railway Company for damages under the homicide statute for the death of decedent. From a judgment for plaintiff, defendant appeals. Affirmed.

The following are the counts referred to in the opinion: "(5) The plaintiff * * * claims of defendant * * * the sum of * * * as damages for that heretofore, to wit, on March 10, 1912, defendant was engaged in operating a line of railroads in and through the city of Jasper * * * and that defendant allowed and permitted the Mobile & Ohio Railroad Company to use and to run and operate trains over its said. railroad lines jointly with defendant; that on the above date plaintiff's intestate was walking along, or was on the railroad track of the defendant in the city of Jasper, and was run over and killed by an engine to which was attached a train of cars being operated by said Mobile & Ohio Railroad Company, on said track by permission and consent of defendant. And plaintiff alleges that the engineer or other person in charge and control of said engine, while acting within the line and scope of his employment as such engineer or other servant, wantonly, willfully, or intentionally ran said engine

over plaintiff's intestate at the time and place aforesaid, proximately causing the injuries herein complained of."

(6) Same as 5 in its statement of facts, and adds the following: "And plaintiff alleges that while his said intestate was on said track as aforesaid and in front of said train, which was rapidly approaching him, he was in a situation of peril which the engineer or other person in charge and control of said engine was conscious of and knew in time to have prevented the injury to plaintiff's intestate, but that said engineer or other person in charge or control of said engine, after he knew and became conscious of the perilous situation in which plaintiff's intestate was at the time and acting within the line and scope of his employment, negligently failed to exercise due care and diligence to avoid the said injury to plaintiff's said intestate, as a proximate consequence of which plaintiff's intestate was killed as aforesaid."

Plea 4 was as follows: "That on June 15, 1908, defendant entered into an agreement or contract of lease with the Mobile & Ohio Railroad Company by which the Mobile & Ohio Railroad Company leased and acquired from defendant the right to operate trains over the track of said defendant from Parrish to Haleyville in the state of Alabama, and defendant avers that the railroad track of defendant and the Mobile & Ohio Railroad Company, as mentioned in said lease are connected with each other, and that under and by virtue of said lease the Mobile & Ohio Railroad Company has the right to operate and does operate its trains over the lines of this defendant from said Parrish to Haleyville, and that the injuries complaned of in said complaint and each count thereof occurred on that portion of the track of defendant over which the Mobile & Ohio Railroad Company has leased from defendant the right to

operate its trains, and that the engine and cars which are alleged to have caused the injury and damage as set out in the complaint were not the engine or cars of this defendant, but were the engine or cars of the Mobile & Ohio Railroad Company, and were being operated at the time of the accident by the servants of the said Mobile & Ohio Railroad Company, under said contract for the exclusive benefit of the said Mobile & Ohio Railroad Company, and were not being operated by this defendant, or by the servants or agent of this defendant."

The following are assignments of error 6 and 7: "(6) The lower court erred in sustaining the objections of the appellee to appellant's question to witness O'Rear: 'This place you speak of as the hall, near the Frisco depot, was that another blind tiger?'

"(7) The question to McAuley by appellee: 'I will ask you whether or not whisky was sold at that pool-room.' "

The excerpt of the oral charge in assignment 8 is as follows: "If at the point, and about the time the people frequented the tracks by use, and that these facts were known to the operator of the train, then the operators of the train shall keep the train in control at that place, so that after the discovery of the party on the track, they could avoid injuring him."

The following is charge 30, refused to defendant: "The court charges you that, in order for you to find a verdict for plaintiff, you must be reasonably satisfied from all the evidence in the case that the engineer or other person in charge of the train which struck plaintiff's intestate, if you believe he was struck by a train, must have had actual knowledge of his position, of peril, and must have had the means at hand to prevent the injuries to or death of plaintiff's intestate, and

must have consciously failed to use such means at hand."

The court gave charge 34 as follows: "Plaintiff's intestate in this case was a trespasser upon defendant's track at the time of his death, and was at a place where neither defendants nor its agents were under duty to keep a lookout for him; and the mere fact that the track at that point was frequently used by pedestrians is not in itself sufficient to show that the engineer or other agent in charge of the train knew, nor was it evidential presumption that such agents of defendant knew that some person was likely to be on the track at the time and place when intestate was killed."

The bill of exception recites that, after the jury had retired to their room, they returned to the courtroom and asked the court to explain to them charge 34, given at the request of defendant. The court said: "That is to say, that any fact in and of itself is not sufficient; but the court left to the jury the proposition whether or not the agents or servants did hit him, in connection with that charge—that is to say, the testimony tends to show that the headlight was working well; that the engineer and other party in charge of the engine were looking ahead along the track, and the evidence showed that they could see along the track from and after they turned the point of the curve, for instance, from 50 to 200 feet, straight along the track, and the evidence showed that this man was killed on the track. I leave it to you to say whether or not the man was on the track before the engine reached him; I leave it to you to say if the headlight was working, throwing the light in front of the engine, and the engineer and fireman were looking ahead, and if the man was on the track, and if there was no obstruction between him and the engine, although the engineer and fireman and

[Northern Alabama Railway Company v. Guttery.]

brakeman said they were looking ahead and did not see him, if he was in fact there. This is a question of fact for you to decide, whether or not from all the circumstances they did see him. The fact that people crossed there frequently is not, in and of itself, sufficient to show that they did see him; the fact that he was there on the track is not sufficient to say that they saw him. But, taking all the facts and circumstances in the case, it is for you, gentlemen, to say whether or not they did in fact see him, in connection with all the rest of the charges I gave you. To illustrate: Any single fact in the case is taken and considered along with all the other facts and circumstances in the case in order to arrive at the truth of the transaction, and that is what we mean by one thing not being sufficient. You should take all the facts and circumstances, and put them together, and see what the whole truth is in arriving at a verdict."

A. G. & E. D. SMITH, and BANKHEAD & BANKHEAD, for appellant.

L. D. GRAY, for appellee.

McCLELLAN, J.—Action for damages, under the homicide statute (Code, § 2486), for wrongfully causing the death of appellee's intestate, Baxter Guttery. The case was submitted to the jury upon the issues initiated by counts 5 and 6 as amended. They will be set out in the report of the appeal. The former attributes intestate's death to willful or wanton misconduct on the part of servants or employees in charge of a train operated over defendant's (appellant's) railway, and the latter, to negligence of such servant's or employees after the discovery of intestate's peril from injury by the approaching engine and train.

The homicide statute, which is penal only in nature and effect, *extends*, by express declaration, the right or cause of action thereby established to include cases where the deceased "could have maintained an action for such wrongful act, omission, or negligence, if it had not caused death." So, if the wrongful act or omission for which the personal representative impleads the defendant would have sustained a right to sue in an action for injury only, instituted by the person injured, the statute effects to affirmatively establish a cause of action for the death attending the culpable act or omission. There is no room for consideration of the mere imputation appellant discusses in brief. Liability is the result, under the circumstances defined, of positive enactment. Hence the only question, in respect of pleading and proof in cases seeking to avail of the provisions of the homicide statute is, Does the case stated and made fall within the purview of the statute? If so, the liability established by the statute is fixed, unless avoided by exonerating act or omission on the part of the deceased.

The pleaded theory of defendant's responsibility and accountability for Guttery's death comprehends the assertion that for the wrongful or negligent acts or omissions of the Mobile & Ohio Railroad Company, resulting in the damnifying consequences averred, in the use of the defendant's tracks, facilities, etc., under contract between them, the defendant is liable. The principle thus invoked is sound, has been established here, and is applicable to the pleadings and evidence presented on this appeal. Where a railroad company admits another railroad company to the joint, common use of its tracks, the owning company is liable to third persons for the negligence of the other company while enjoying the right of such use.—*R. R. Co. v. Brown*, 17 Wall. 445,

450, 21 L. Ed. 675; *Ricketts v. Birmingham Street Ry. Co.*, 85 Ala. 600, 604, 605, 5 South. 353; *Central of Ga. Ry. Co. v. Wood*, 129 Ala. 483, 29 South. 775; Elliott on Railroads, § 475. The contract exhibited with plea 4 authorized the joint, common use by the hiring company of the tracks of the owning company, and expressly contemplated a joint occupancy of the tracks, as distinguished from such an exclusive enjoyment by the hiring company as would exempt the owning company from responsibility for the wrongful or negligent conduct or omission of its associate in use of the property. We know of no positive law that alters the legal status the stated doctrine establishes under the circumstances shown by the counts, by plea 4, and by the evidence adduced on the trial. Code, § 3497, does not do so. There was no error in overruling the demurrers to amended counts 5 and 6, in sustaining the demurrer to plea 4, and in refusing the general charge based upon the idea of the absence of responsibility of the defendant, the owning company, for the negligent or wrongful acts or omissions of the hiring company, the Mobile & Ohio Railroad Company.

. There was no error in allowing the inquiry, by plain-. tiff's counsel on the examination in chief of W. B. Guttery, seeking to show the customary, frequent use by pedestrians of the track at the point where intestate' was killed. The fifth count as amended declared as for willful or wanton misconduct in running the engine upon intestate while he was walking along or on the track at that point; and evidence tending to show such customary, frequent use of the track thereat, by large numbers of pedestrians, in connection with knowledge thereof by the operatives charged was admissible under the issues made by that count.—*Birmingham Sou. Ry. Co. v. Fox*, 167 Ala. 281, 52 South. 889, and *Sou. Ry.*

*Co. v. Forrister,* 158 Ala. 477, 48 South. 69, among others. *Sou. Ry. Co. v. Stewart,* 179 Ala. 304, 60 South. 927, while holding for error the omission of the pleader to aver in the sixth count that Stewart's intestate was within the *custom* alleged, along with the pleader's catalogue of the facts and circumstances he essayed to enumerate, reiterated the doctrine of the *Lee Case,* 92 Ala. 271, 9 South. 230, at the same time noting the misconception of its effect that probably lead to the subsequent expansion of its principle to cases outside its intended limits. Under the rule of evidence reaffirmed in the *Stewart Case* evidence was admissible to the end indicated by the question propounded to Guttery.

Like considerations deny error in respect of the excerpt from the oral charge set out in assignment numbered 8.

The questions to the witness O'Rear and McCauley, set forth in assignments 6 and 7, respectively. were clearly objectionable. Responses to them would have been without any bearing on the issues involved on the trial.

There was no error in the refusal to defendant of the special instruction numbered 30. It pretermitted consideration by the jury of the feature of the case made by the wanton count under the phase of the evidence tending to show that the place at which intestate was stricken was a point customarily frequently used by large numbers of the public within the pertinent doctrine reaffirmed in *Sou. Ry. Co. v. Stewart,* 179 Ala. 304, 60 South., at pages 928 (second column) and 929 first column). If, however, that fault of the charge was ignored of effect or review here, it would seem that no injury attended its refusal to defendant, for that the court gave to the jury, at defendant's request, charges

numbered 26, 27, 29, 36, which covered the substance of this charge numbered 30.

After giving, at defendant's request, special charge numbered 34, the court, upon request of the jury, made an extended comment upon it. It is insisted that this comment was a *qualification,* not an *explanation,* of the charge. The latter the court may usually do without error; but the former it is error to do. The court has carefully considered the charge *and* the statements of the court in response to the jury's request, and find that statements of the court were in *explanation,* not in *qualification,* of the charge, and that the expressions made by the court were within the rule announced in *Callaway & Truitt v. Gay,* 143 Ala. 524, 529, 39 South. 277.

The evidence in this case is voluminous. It has been carefully considered, particularly in the light of the discussions thereof in the briefs. It would be entirely vain to undertake a detailed treatment and discussion of the evidence in the opinion. The conclusion is unescapable that the effect of the evidence was to require the submission to the jury of the issues made by the two counts on which the trial was had. There was evidence *tending,* among other things, to show: The living presence of Guttery on the track at the place his remains were found; marks of blood on the counterbalance of the driving wheel of the Mobile & Ohio engine which passed soon after Guttery went toward the place where his body was later found; great speed, without signals or warnings given by this train before and as it approached the place of injury; that the enginemen were looking ahead over that point on the track; that the headlight was giving good service; that to one looking ahead, as these operatives were said to be doing, along that section of track a man could be seen not-

withstanding the curve in the track which, with the engine moving, might have deflected the range of the headlight to the side; that Guttery's foot may have become caught and fastened in the switch point; that the discovery of his position of peril by the enginemen might have been made, and was made, at a sufficient distance from him to have enabled them to stop the engine before it reached him; and that this place was, about that time, customarily used by large numbers of pedestrians, of which asserted fact these operatives were aware. The engineer testified that, according to orders, he was *looking ahead* on this occasion along the track for a train that usually preceded his through the Jasper railroad yard. Certainly it cannot be affirmed *as a matter of law* that in observing this duty his *purpose* in looking ahead confined or restricted his vision. If this engineer was looking ahead and saw intestate in a position of peril ahead of his moving engine, and so far removed as to allow opportunity, skilfully availed of, to avert injury to him, it was, according to repeated deliverance here, a question for the jury to determine whether his omission to act as duty required was, at the time, characterized by those elements of wrongful purpose or wanton indifference to which the law attributes the most aggravated wrong—that declared on in the fifth count as amended. The decision in *Carlisle v. A. G. S. Ry. Co.,* 166 Ala. 591, 52 South. 341, does not work a departure, in the particular consideration, from *Bush's Case,* 122 Ala. 470, 26 South. 168; *Shelton's Case,* 136 Ala. 191, 34 South. 194; *Hyde's Case,* 164 Ala. 162, 51 South. 368; *Central of Ga. Ry. Co. v. Stewart,* 178 Ala. 651, 59 South. 507; among others in their line.

In *Carlisle's Case, supra,* the evidence was that such a lookout was, on the occasion, being maintained by ·

the trainmen as was consistent with the perfomance of other duties, and there was no evidence that deceased was on the track ahead of the engine. Here there was evidence upon which the jury could predicate a finding that the lookout was along the track at the place where Guttery was killed—a lookout not qualified by the then performance of other duties that took the view of the operative away from this section of the track. The facts recited in the opinion in *Sou. Ry. Co. v. Drake,* 166 Ala. 540, 51 South. 966, were radically different from those disclosed by the record here.

No error being shown, the judgment must be affirmed. Affirmed.

SAYRE, DE GRAFFENRIED, and GARDNER, JJ., concur.