# Carlisle *v.* Alabama Great Southern Railway.

*Death of Person on Track.*

(Decided April 14, 1909.   52 South. 341.)

1. *Railroads; Persons on Track; Negligence; Willfulness; Bur-
den of Proof.*—Where a person is killed on a railroad track at
night within the corporate limits of the city, not at any road or
street or at a road crossing, and an action is brought thereon contain-
ing counts in simple negligence and in wanton and willful injury,
the burden is on the railroad company under section 5476, Code
1907, to meet by specific proof the specific negligence averred, but
it is on the plaintiffs to show a cause of action for willful injury.

2 *Same; Last Clear Chance.*—In an action for the death of a
pedestrian on a railroad track where the trainmen denied all knowl-
edge of the presence of the deceased on the track deceased's per-
sonal representative could not recover on the theory that the engi-
neer became aware of the intestate's presence on the track under
circumstances reasonably indicating peril, and that by reasonable
care thereafter, he could have prevented the accident.

3. *Same; Evidence.*—Where a decedent was killed at night by a
railroad train and there was no one who saw the accident, the mere
fact that he was killed on the track was not sufficient to afford

[Carlisle v. Alabama Great Southern Railway.]

an inference that he was ever on the track in advance of the engine. nor was the fact that the track was straight and that the engineer kept a lookout ahead as far as consistent with other duties, in the operation of the engine, sufficient to afford an inference that either the engineer or the fireman saw the deceased on the track.

4. *Same.*—The evidence in this case examined and held insufficient to afford an inference of willful injury.

5. *Appeal and Error; Review; Record.*—Where the interrogatories were not in the record the overruling of plaintiff's motion for judgment because certain interrogatories propounded to the defendant were not sufficiently full, could not be reviewed.

APPEAL from Bessemer City Court.

Heard before Hon. WILLIAM JACKSON.

Action by Elma Carlisle as administratrix, etc., against the Alabama Great Southern Railroad Company for the death of her intestate. Judgment for defendant, and plaintiff appeals. Affirmed.

The case made by the pleadings and evidence is sufficiently stated in the opinion of the court. The evidence to which objection was sustained, which is referred to in the opinion, is as follows: Plaintiff asks its witness George Going if there was an arc light between Alabama avenue and Arlington avenue; also its witness Lipscomb whether or not Lowe had been running an engine on that road for three years through Bessemer; also of witness Wood, "What distance could an engine, with 23 cars well equipped with air emergency brakes, be stopped, running at not exceeding eight miles per hour, and not less than six, being operated over this track, going north and upgrade?" also, to the same witness, "An engine with 20 cars behind it, going south over this track as mentioned, between Nineteenth and Fourteenth streets, with all modern appliances, and in good order, with an air emergency brake throughout the train, running at not over eight miles per hour, and not less than six miles per hour, could be stopped in what distance, with such train and appliances?" also

to the witness Van Hearn, "If the train he had testified to as being on the Nineteenth street crossing, was an Alabama Great Southern train?"

PINCKNEY SCOTT, for appellant. The plaintiff was entitled to judgment by default for failure of plaintiff to answer interrogatories.—Sections 4052 and 4055, Code 1907. The court erred in overruling demurrer to plea 2.—*C. of Ga. Ry. Co. v. Hyatt,* The court erred in overruling demurrer to pleas 3, 4 and 5.—*Johnson v. Bir. R. L. & P. Co.,* 149 Ala. 533. Under the provisions of section 5476, the facts in this case were certainly sufficient to raise the presumption or the inference that the trainmen saw the deceased sometime before striking him.—*Bush's Case,* 122 Ala. 487; *Southern Ry. v. Shelton,* 136 Ala. 214; *Southern Ry. Co. v. Smith,* 50 South. 390. It follows that under these authorities the court erred in giving the affirmative charge for the defendant.—*Blanton's Case,* 84 Ala. 154; *Bir. Min. v. Harris,* 98 Ala. 332; *Shanks' Case,* 139 Ala. 490.

A. G. & E. D. SMITH, for appellee. The answers to the interrogatories are not set out in the record and the court cannot pass on the same.—*A. G. S. v. Bailey,* 112 Ala. 167; *Wiggins v. Witherington,* 96 Ala. 535. Plaintiff was not entitled as a matter of right to judgment.—*M. & C. v. Martin,* 30 South. 827; *City of Bessemer v. Southern,* 157 Ala. 428. If the defendant was entitled to the affirmative charge any error that might have intervened in passing upon special pleas was without injury where the general issue was pleaded.—*Mizell v. Southern Ry. Co.,* 132 Ala. 504; *Wynn v. McCraney,* 46 South. 854. The court did not err in reference to the evidence.—*A. G. S. v. Clark,* 39 South. 816; *Harris v. Basden,* 50 South. 321; *Horton v. L. & N.,* 49 South.

[Carlisle v. Alabama Great Southern Railway.]

423; *Chandler v. Higgins,* 47 South. 284. The court has the right to refuse to permit a witness to be recalled for further cross examination.—*Vann v. The State,* 140 Ala. 122. As to all the counts except the first, there was a variance which entitled defendant to affirmative charge as to them.—*A. G. S. v. McWhorter,* 47 South. 84; *H. A. & B. v. Maddox,* 100 Ala. 618; *M. & E. v. Culver,* 75 Ala. 587. The counts show that plaintiff's intestate was a trespasser on the track.—*Ensley Ry. Co. v. Chewning,* 93 Ala. 24; *G. & A. R. R. Co. v. Julian,* 133 Ala. 371; *H. A. & B. v. Robbins,* 124 Ala. 113. It therefore follows that unless there was wanton or intentional wrong or negligence after the discovery of peril, there can be no recovery.—*Glass v. M. & C.* and authorities supra, 94 Ala. 581. Where there is no duty violated there is no actionable negligence, and hence, counts 4 and 6 state no cause of action.—*Southern Ry. Co. v. Drake,* in MS; *Southern Ry. Co. v. Smith,* 50 South. 390. Knowledge of peril is requisite to subsequent negligence.—*Anniston E. & G. Co. v. Rosen,* 48 South. 798; *Johnson v. Bir. R. L. & P. Co.,* 43 South. 33. The evidence does not make out a case of subsequent negligence or wanton injury.—*Johnson v. B. R. L. & P. Co., supra,* and authorities cited; *Southern Ry. v. Gullatt,* 150 Ala. 318; *L. & N. v. Mitchell,* 134 Ala. 261; *Nash v. Southern Ry.,* 136 Ala. 177; *Mizell v. Southern Ry., supra.*

SAYRE, J.—The point on defendant's track where the body of plaintiff's intestate was found after death, and the point where he had been crushed and whence his body had been dragged a short distance by the train, were within the corporate limits of the city of Bessemer, but were not in any road or street nor at any road or street crossing. The track was straight for some

distance in either direction. This track and others were upon the defendant's right of way which lay immediately between two avenues; the two avenues and the intervening right of way covering an open space, we judge, from 200 to 250 feet in width. The deceased came to his death between 9 and 11 o'clock, p. m., and was doubtless killed by one or the other of two trains operated by the defendant between those hours—it being perhaps unnecessary to state minor differences in the evidence in respect to their operation, for, in every substantial particular, the facts in respect thereto are the same. One train, moving to the south, consisted of an engine and 20 freight cars. The other, moving about an hour later to the north over the same track, carried 23 cars. Both trains stopped over or in close proximity to the place where the body of deceased was found and where it had been crushed on the track. Deceased, when last seen, about 9 o'clock, was probably much intoxicated, though some of the evidence tends to show that he was "drinking" only. He then seemed to be waiting to catch a street car which would pass along on a track on Carolina avenue parallel with, and just to the east of, defendant's right of way. The car would carry him home to Jonesboro which lay to the south. No one saw the catastrophe. Interrogatories were propounded to the defendant under the statute for the examination of adverse parties, and answered on the oath of the trainmen who operated the two trains. The depositions of these witnesses were introduced by the plaintiff. The trainmen denied any knowledge whatever of the circumstances under which deceased came to his death. They deposed that the engines and trains were properly equipped in every respect; that headlights were burning; that the bells were rung at short intervals; that they kept a lookout ahead as far as they

[Carlisle v. Alabama Great Southern Railway.]

could consistently with their other duties in the operation of the trains, but saw nothing on the track; and that the trains moved at a rate of speed not in excess of six miles an hour. No attack was made upon their credibility, nor was there evidence of any fact which would tend to discredit their testimony, unless some tendency of that sort is to be found in the surroundings and their own statements. The court below gave the general affirmative charge for the defendant, with hypothesis. The complaint of leading importance here is that this action of the court was error. Section 5476 of the Code is made the basis of the contention. So much of that section as needs to be repeated is as follows: "When any person * * * is killed or injured * * * by the locomotive or cars of a railroad, the burden of proof, in any suit brought therefor, is on the railroad company to show a compliance (with three preceding sections), and that there was no negligence on the part of the company or its agents." It is argued that it should have been left with the jury to say whether the defendant had sustained the burden of proof put upon it by the statute.

It is necessary to note the theory of plaintiff's case as stated in the complaint. Counts 1 and 2 aver a wanton, willful, or intentional killing in general terms. Count 5 imputes to defendant's servant in charge of the engine or train wanton, willful, or intentional misconduct after discovering that plaintiff's intestate was in a perilous and dangerous condition on the track of defendant's railway. Counts 3 and 7 allege that, after discovering the perilous position of plaintiff's intestate on the track, the engineer so negligently operated the engine as to kill him, thus charging what is commonly spoken of as subsequent negligence. Count 4 charges a negligent failure to blow the whistle or ring the bell

at short intervals while moving within the corporate
limits of the city of Bessemer; while 6 avers a failure
to observe an ordinance of the city of Bessemer which
prohibits the movement of trains therein at a greater
rate of speed than six miles an hour.

So far as this case is concerned it will be assumed
that the enactment of that provision of the statute
which imposes upon railroad companies the burden of
acquitting themselves of any negligence was a constitu-
tional exercise of legislative power, no question having
been made about that. It is not assumed, however,
that, apart from the requirement of the observance of
the particular precautions commanded by the statute
at designated places, any greater degree of care is
thereby imposed upon railroads than are imposed by
the general rule of due care in the operation of rail-
roads. That the statute makes no change in this re-
spect is recognized in the recent case of *L. & N. R. R. Co.
v. Holland,* 51 South. 365. It will not be assumed that
the statute was intended to require railroad companies
to anticipate every conceivable way in which death or
injury may happen to one by the operation of a train
and to produce evidence to exclude such universal pre-
sumption of negligence. It is not supposed, for in-
stance, that trains must be operated with reference to
the possibility that some one may undertake to steal
a ride or pass between the cars. We apprehend that
the railroad discharges the duty placed upon it when it
shows that it has complied with the particular require-
ments of the statute, and observed that degree of care
imposed by a situation of which it had knowledge or
which it ought to have reasonably anticipated. Nor can
wanton, willful, or intentional wrong be imputed to
railroad companies by the mere absence of all evidence.
The statute requires only proof that there was no neg-

ligence, and in many cases this court has recognized the vital distinction between mere negligence, on one hand, and intentional wrong, or that conscious disregard of the probable consequences of a known situation of danger which is the equivalent of intentional wrong, on the other. So, then, the burden of proving counts 1, 2, and 5 rested upon the plaintiff in this case. Under the other counts the burden was on the defendant of meeting by proof the specific charges of negligence stated in them.

Plaintiff having proved without contradiction, by the testimony offered in her behalf, compliance by the defendant with the statute of the state and the ordinance of the city of Bessemer, the question is whether the defendant failed to show the exercise of due care in any other respect. Under those counts charging subsequent negligence the jury would have been authorized to find a verdict for the plaintiff upon one hypothesis only, namely, that defendant's engineer became aware of the presence of plaintiff's intestate upon the track under circumstances reasonably indicating peril, and thereafter failed to take such precaution for his safety as due care would have suggested. For such, in effect, is the averment. The trainmen having denied all knowledge of the presence of the deceased on the track, on what theory might the jury have inferred the contrary? Appellant cites the cases of *Southern Ry. Co. v. Bush,* 122 Ala. 470, 26 South. 168, and *Southern Ry. Co. v. Shelton,* 136 Ala. 191, 34 South. 194. In the case first named it was shown beyond question that Bush, the person killed, was upon a trestle in advance of the train, and was there killed. The trial court refused to charge the jury that the fact that the track was

[Carlisle v. Alabama Great Southern Railway.]

straight for a long distance, and the view of the track
unobstructed, and the engineer was in his seat looking
ahead on the track, and that there was nothing to pre-
vent the engineer from seeing a person on the track,
were not sufficient to authorize an inference that the
engineer saw Bush.  This court held the charge to have
been properly refused.  At more than one point in the
opinion emphasis is laid upon the fact that the engineer
was looking ahead along the track.  The court said that
the ·facts stated in the charge were certainly relevant
and admissible for the purpose of proving that the en-
gineer did see Bush, and were properly submitted to
the jury on that issue.  The court added: "While no
presumption arises from these facts that the engineer
did see the person on the track, yet this may be inferred
from these facts by the jury, whose province alone it is
to decide the weight to be given to facts legally in evi-
dence and their effect on an issue which they are ad-
mitted to prove."  In *Southern Ry. Co. v. Stewart,*
twice considered here (153 Ala. 133, 51 South. 51), the
person injured was at a place where no rule of law im-
posed upon the railroad company the duty of keeping a
lookout for him.  The absence from the record of any
evidence showing that the engineer was looking ahead
when or immediately before the engine ran over the de-
ceased was considered a sufficient reason for taking
away from the jury those aspects r      case in which it
was sought to impute negligence or .rantonness to the
engineer subsequent to the discovery of the deceased
upon the track.  The ruling was that the evidence had
failed to show prima facie that the engineer had seen
the deceased, there being at that place no duty to keep
a lookout for him.  The *Shelton Case* is in many re-
spects similar to the case to be decided.  There, the en-
gineer and fireman testified that they had kept a look-

out forward, but had not observed Shelton on the track. There was, however, also positive testimony that deceased was on the defendant's track in advance of the engine, and that the engine had run over him. On the case so presented this court said: "The jury were not bound to believe or disbelieve the testimony of these witnesses in its entirety. They could believe that they were looking ahead at the time, and that they could have seen a man on the track, and disbelieve their statements that they did not see any one on the track. And the conclusion on the evidential tendencies under consideration would be drawn thus: Shelton was in a position of manifest peril on the track in front of the engine. He was in view of the enginemen. They were looking along the track where he was. Therefore, they must have seen him, and this though they testify that they did not." It is to be observed that in the *Bush Case* the language quoted was used in view of the undisputed fact, and in the *Shelton Case* in view of the fact expressly assumed for the argument, that the deceased was upon the track in advance of the engine and was destroyed by the engine. In the case under consideration the fact that the track was straight and the enginemen keeping a lookout ahead, as far as consistent with the discharge of other duties in the operation of the train, affords, of course, no inference that they saw deceased upon the track unless by some other evidence it be shown that he was in fact upon the track in advance of the engine. Certainly the fact that deceased was killed upon the track, and other circumstances, go to show that a train ran over him. But if the testimony of the trainmen that they looked and saw nothing upon the track be taken out of the case—and this testimony makes only for defendant's view—it is left without factors of reasonable decision whether plaintiff's intestate

was on the track in advance of the engine and so was run over, or whether he fell under the train in some other way, as may well have been the case. We conclude, therefore, that the plaintiff, in the evidence offered by her, discharged prima facie the burden of proof put upon the defendant by the statute, and that conclusion that her intestate was killed by the negligence of the engineer subsequent to the discovery of his presence upon the track, or otherwise negligently, has nothing but surmise upon which to rest.

As for the general charge of wanton, willful, or intentional injury contained in counts 1 and 2, we think that neither any argument made nor any difficulty inherent in the evidence renders it necessary that the evidential facts should be stated. In our judgment there was no evidence which would have supported a finding of either wantonness or intentional wrong. The evidence was wholly inadequate to show that frequent use of the track at that hour of the night which would warrant a finding that there existed in fact conditions which rendered it more than ordinarily dangerous to operate trains at that point. And without regard to this deficiency in the evidence, there is nothing to show an operation of the trains on the occasion in question in a reckless or wanton manner. The trains moved at a rate of six miles an hour upon the defendant's property, with headlights burning and bells ringing. It cannot be said, nor could the jury infer, that such an operation of trains would probably result in injury.— *Southern Ry. Co. v. Shelton, supra.*

Of appellant's motion for a judgment in default of full answer to the interrogatories propounded by her to the defendant, and the assignment of error based upon the action of the trial court in overruling it, it is needful to say only that the interrogatories nowhere

appear in the record, and we cannot, of course, determine that the answers failed to make full disclosure of everything required.

Having reached the conclusion indicated as to the prima facie sufficiency of the evidence to acquit the defendant of negligence, and the inherent defect in the evidence offered to rebut the case so made, it is requisite to inquire, further, only whether plaintiff was improperly denied an opportunity to prove facts which might have added weight to her case. It is entirely clear that none of the facts, which the court refused to let plaintiff prove, could have supplied the defects in plaintiff's case which have been pointed out. If it should be assumed that the rulings complained of were erroneous, the errors were errors without injury.

We are of the opinion that the court below reached a correct conclusion, and that its judgment ought to be affirmed.

Affirmed.

DOWDELL, C. J., and SIMPSON and ANDERSON, JJ., concur.