## Southern Railway Company v. Shirley.

*Injury to Person on Track.*

(Decided November 7, 1915.　66 South. 511.)

1. *Railroads; Trespassers; Care as to.*—Where an engineer was keeping a lookout ahead, and was running his train at a speed not exceeding ten or twelve miles an hour, while passing a place where a decedent trespasser was discovered in a prostrate condition near the track, and thought to have been struck by a train, and the place was such that the approach of trains could be easily seen and heard, and people on the track could easily leave the track, it is not shown that the operators of the train violated any duty which they owed to decedent.

2. *Same; Injuries.*—Where decedent, a trespasser, was lying on the ground near defendant's main railroad track when the train approached, and hence, escaped the observation of the engineer and conductor, who were keeping a lookout from the engine on the right hand side of the cab, and such decedent was not discovered until the fireman noticed her prostrate body as the engine passed her, he being at the time coaling his engine, no negligence of an actionable character on the part of the railroad company and its employees was shown.

3. *Same.*—The evidence examined and held insufficient to show that decedent trespasser was even struck by the train, or any train.

APPEAL from Walker Circuit Court.

Heard before Hon. J. J. CURTIS.

Action by Marion Shirley, administrator, for damages for the death of her intestate, against the Southern Railway Company. Judgment for plaintiff, and defendant appeals. Reversed and remanded.

[Southern Railway Company v. Shirley.]

The case was submitted to the jury on the eight and ninth counts of the complaint; the eighth charging that defendant's servants willfully or wantonly ran its train over or upon plaintiff's intestate, thereby proximately causing her death, and the ninth charging that the said act thus resulting was negligently done by said servant after they discovered the intestate in peril on the railroad track. The facts are without material conflict. When first discovered, Mrs. Shirley, the intestate, was lying between the side track and the main track of the railroad, a short distance east of Corona station, at about 7:55 a. m. She was somewhat doubled over, her head nearly touching the end of the ties of the main track, or lying for an inch or two between two of them, and supported by her arm, and her feet pointing at right angles from the track. It had rained during the night before, and she was very wet and shivering with cold. She was in a semiconscious condition, and gave no account of herself. No disturbance of the adjacent ground was visible, nor any injury to her person, except a small bruise on the forehead. Subsequent examination, however, showed some scratches and bruises, described by a medical witness as not of a serious nature, who also testified that there were no fractures, and he did not consider the bruises sufficient to cause death. The intestate had been a patient at a local infirmary for several days, and some time during the night before, without the knowledge of any one, she had disappeared from the infirmary, leaving there her outer clothing. When next seen she was lying near the track as aforesaid in nightgown and stocking feet, an underskirt half torn off, and only a cloak around her. She was first seen by Tom Cook, the fireman on train 72. He testified:

That between Corona and the time Mrs. Shirley's body was discovered he was engaged in fixing the fire box. When he first discovered Mrs. Shirley's body it was lying right crossways of the track, just clear of the ties. "The engine (the cylinder, you might say— the front part) had just passed her. I gave notice to the engineer and conductor. I had not seen her at any time before that. When I saw her she was clear of the train, lying lengthwise of the ties. After I left the station, I never did look ahead until I got there. I do not know whether it hit her or not. I did not say to Mr. McKippon, the conductor, that we had struck a woman, or knocked a woman off, I said, that there was some one down there."

The engineer and conductor were on the engine with the fireman when the latter discovered the body. Testifying for plaintiff, the conductor said:

That he was on the engineer's side looking at the track in front, and saw nothing of Mrs. Shirley. That his attention was first attracted to her by Tom Cook saying that we had hit a woman. Looking out from the engineer's side, one could not see her where she was on the fireman's side.

On cross-examination he said:

"I don't know exactly what Tom Cook said. It seems to me he did say that we had hit a woman. There was a woman in it, and I stepped across to his side and saw a woman there. I am certain that he called my attention to a woman, and I stepped by him and looked out. Nothing struck her after that."

The engineer testified:

That after leaving Corona station he was looking straight ahead along the track out of the window in front of him. He did not see Mrs. Shirley nor any other person on the track, and did not see Mrs. Shirley at all.

"When the fireman mentioned about a woman being over there, he told me to pull by and stop at the caboose even with her."

On cross-examination he said:

"I did not see a woman lying there, and there was nothing on the track to keep me from seeing her lying there. I didn't see her after the fireman called my attention to it. I heard him say that there was a woman there. I could have seen her if she had been standing up. I do not know whether my train hit her or not."

There was no evidence in any way tending to show that Mrs. Shirley had at any time been upon the main track, nor at what time she approached the track. The only testimony as to her whereabouts and experiences after her attendant left her at 10 o'clock the night before, and up to the time of her discovery near the railroad track, was her own statement, made after she was taken back to the infirmary, that the injury on her head was caused by her falling off a bridge while she was trying to go home. This statement was testified to by Mrs. Wright, matron nurse, who was attending her. This statement is corroborated by two other women who visited the infirmary on the day Mrs. Shirley went back, and were assisting Mrs. Wright in putting her to bed, and they say further that Mrs. Shirley said that the train did not hit her. All three witnesses agree that Mrs. Shirley seemed to be rational at the time. Several witnesses testified that she did not seem rational at other times when they were with her, and did not recognize acquaintances. She died about ten days later. At the point where intestate was found, the public had no right to be, but some of the testimony tended to show that people in the neighborhood, where there lived about 600 or 700 people, habitually used the track there as a passageway between Corona and Patton Junc-

tion, about a mile away, and that such use was very frequent and constant between 7 and 8 a. m. The track there was open and straight, and the topography there, not dangerous for pedestrians on the track. The train, a through freight, was running not over 10 or 12 miles an hour when it passed the place where intestate was found.

The trial court refused the affirmative charge on the whole case, and, upon the several counts thereof, requested in writing by defendant, and there was verdict for plaintiff in the sum of $2,500.

BANKHEAD & BANKHEAD, for appellant.

RAY & COONER, for appellee.

SOMERVILLE, J.—Conceding that the public use of defendant's track as a passageway by trespassing pedestrians was such as to impose upon its servants the duty of observing due care not to take them unawares and injure them, at the point where the intestate's body was found, it is clear, under the evidence before us, that in the operation of this train the engineman violated no duty in this regard, since the engineer was keeping a lookout and was running his train at a speed not exceeding 10 or 12 miles an hour, and this at a place where its approach could be easily seen and heard, and where pedestrians could easily leave the track.— *Carlisle v. A. G. S. R. R. Co.,* 166 Ala. 591, 601, 52 South. 341. The trial judge properly instructed the jury that unless the trainmen actually saw Mrs. Shirley on the track, and in time to avoid injuring her, the plaintiff could not recover.

It is, however, insisted for the appellant: (1) That the evidence does not show nor permit any reasonable

inference that the intestate was killed by the train; and (2) that, in any case, the undisputed evidence shows that the trainmen did not see her at all until the engine was passing her recumbent body by the side of the track; and (3) that, however that might be, there is no support in the evidence for any reasonable inference that the intestate's death resulted proximately from any injuries inflicted by the train. Of course, if any one of these contentions be correct, the trial judge was in error in refusing to give for the defendant the general affirmative charge, as requested, on the whole case and on each of the counts.

Whatever might be said for and against the first and third contentions as above noted, it seems entirely clear that the defendant's second contention is well founded.

In the first place, there is nothing in the evidence that can be said to even suggest that the intestate was on the track in front of this train, or that she even at any time got as far as the track. The statement of the fireman, shortly after the engine passed her body, that "we have hit a woman," conceding its admissibility as part of the res gestæ, is in itself entirely consistent with the theory that, if the intestate was struck by the engine at all, she was struck from near the left side of the track; and, taken in connection with his testimony, it is certain that he did not see her struck, and only inferred that she was struck because he suddenly saw her body lying on the ground near the track. At any rate, the quoted statement cannot support any rational inference that he saw her *walking or standing* or sitting on or near the track. The proof is that she was found as she was first seen, lying prone upon the ground. In the absence of evidence to the contrary, the burden of proof in this respect being upon the plaintiff, it must be presumed

that she was thus lying when the train approached her; and to a trespasser in that position the trainmen owe no duty of lookout and discovery.—*So. Ry. Co. v. Stewart,* 179 Ala. 304, 60, South. 927. The .testimony of the conductor, who was a witness for the plaintiff, confirms that of the engineer, who was a witness for the defendant, that both were keeping a lookout along the track in front, from the engineer's window on the right of the cab, and that neither of them saw the intestate.

The only rational inference that can be drawn from all the evidence is that the intestate was lying upon the ground near the track when the train approached, and hence escaped observation by the conductor and engineer looking out on the opposite side of the cab.

It is to be noted that in those cases, where it has been held that notwithstanding the engineman's testimony that they were keeping a lookout at the time of striking the injured person, and did not see him on or near the track in front of the engine, it was a question for the jury whether or not in fact they did see him, the rulings rest upon the assumption that some of the evidence showed that the injured person was in fact *upon the track,* and hence they *must* have seen him in spite of their denials.

In *Carlisle v. A. G. S. R. R. Co., supra,* in noting this very distinction, 'the court said: "It is to be observed that ·in the *Bush Case,* 122 Ala. 470, 26 South. 168, the language quoted was used in view of the undisputed fact, and in the *Shelton Case,* 136 Ala. 191, 34 South. 194, in view of the fact expressly assumed for the argument, that the deceased was *upon the track in advance of the engine* and was destroyed by the engine. (Italics ours.) In the case under consideration the fact that the track was straight and the enginemen keeping a lookout ahead, as far as consistent

\* \* \* with other duties in the operation of the train, affords, of course, no inference that they saw deceased upon the track, unless by some other evidence it be shown that she was in fact upon the track in advance of the engine."

We can discern, in the present case, no valid theory upon which the jury could be authorized to infer that these enginemen saw this interstate in a place of danger, and then wantonly or intentioally or without heed ran upon her.

In *L. & N. R. R. Co. v. Calvert*, 172 Ala. 597, 55 South. 812, the plaintiff's intestate was killed in a buggy at a public crossing, and it was shown that the enginemen were keeping a lookout down the track, but also for persons approaching the crossing; and it was held a question for the jury to determine whether the engineer, who was looking ahead, discovered the horse and buggy *approaching the crossing* and before the collision. The *Calvert Case* is therefore not an authority for guidance here.

We think that upon this issue the defendant was entitled to the general affirmative charge, and that its refusal was error.

Independently of this, upon a consideration of the defendant's motion for a new trial, we are impelled to the conclusion that the overwhelming weight of the evidence shows that the intestate was not struck by the train at all, but that she was scratched and bruised while wandering about in the night or early morning barefooted, in her night clothes, and in a half demented condition, and that she either lay down or fell down exhausted, near the track where she was found, long before this train passed by. It seems incredible that she could have approached the track at this hour in a populous neighborhood, where great numbers of peo-

ple habitually passed, without being seen by any human being at any stage of her journey; and it seems equally incredible that she could have been struck on the head or body by a freight train going 10 or 12 miles an hour without other injuries than a few insignificant bruises and scratches which did not even break the skin. Nor is it at all apparent why her own statement as to the manner of her injuries, made, as three credible witnesses declare, while apparently rational, are not entirely trustworthy. On this issue the trial court should have set aside the verdict as being against the evidence, and granted the motion for a new trial.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and GARDNER, JJ., concur.